Reproduced from the holdings of the National Archives @ Riverside

cc to R

1

2

3

FILED
CLERK, U.S. DISTRICT COURT

4

JUL – 1 1998

5

6

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    October 1997 Grand Jury

11

12   UNITED STATES OF AMERICA          ) CR 97-1085(D)-R
                                       )
13              Plaintiff,             ) FIRST SUPERSEDING
                                       )
14              v.                     ) I N D I C T M E N T
                                       )
15   MICHEL WITHERS, aka Bill,         ) [21 U.S.C. § 848(b):
     ROBERT ABDELKADER, SR., aka       ) Continuing Criminal Enterprise;
16   Big Daddy,                        ) 21 U.S.C. § 846:  Conspiracy to
     MELVIN HUDSPATH,                  ) Distribute and to Possess With
17   JAMES COLEMAN, aka Quaker,        ) Intent to Distribute Cocaine,
     JOHNNY WITHERS,                   ) Cocaine Base, and Heroin; 21
18   MARLIN POLK, aka Boonie, aka      ) U.S.C. § 843(b):  Use of a
     Black,                            ) Telephone to Facilitate the
19   NABOR MARTIN GUTIERREZ,           ) Distribution of Cocaine; 21
     SHANNON CULVER,                   ) U.S.C. § 841(a)(1):
20   LATRELLA STEVENSON,               ) Distribution and Possession
                                       ) with Intent to Distribute
21              Defendants.            ) Cocaine, Cocaine Base, and
                                       ) Heroin; 18 U.S.C. § 1956:
22                                     ) Laundering of Monetary
                                       ) Instruments; 18 U.S.C. § 2:
23   _____  ) Aiding and Abetting]

24

25          The Grand Jury charges:

26   \\

27   \\

     SLM/JLK/sla

28



ENTERED ON ICMS
JUL 15 1998

Reproduced from the holdings of the National Archives at Riverside

COUNT ONE

[21 U.S.C. S 846]

Beginning on a date unknown and continuing to on or about December 3, 1996, in Los Angeles County, within the Central District of California, and elsewhere, defendants ROBERT ABDELKADER, SR., aka Big Daddy ("ABDELKADER"), JAMES COLEMAN, aka Quaker ("COLEMAN"), MELVIN HUDSPATH ("HUDSPATH"), along with Janetta Johnson, Mary Johnson, Darrell Carter, aka Spud ("Carter"), Jesse Dodd ("Dodd"), Michel Withers, aka Bill ("Withers"), Brady Armstrong III, aka Shady ("Armstrong"), Dartagnan Magee, aka Die ("Magee"), Latrella Stevenson, Theresia Bonner, aka Tasty ("Bonner"), and others known and unknown to the Grand Jury, willfully and knowingly conspired and agreed with each other to commit and carry out offenses against the United States in violation of Title 21, United States Code, Section 846, namely:

1. To knowingly and intentionally possess with intent to distribute more than one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

2. To knowingly and intentionally distribute more than one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

3. To knowingly and intentionally possess with intent to distribute more than 50 grams of a mixture or substance

2

Reproduced from the holdings of the National Archives & Records Administration

1  containing a detectable amount of cocaine base ("crack cocaine"),
2  a Schedule II narcotic drug controlled substance, in violation of
3  Title 21, United States Code, Section 841(a)(1); and

4       4. To knowingly and intentionally manufacture and distribute
5  more than 50 grams of a mixture or substance containing a
6  detectable amount of crack cocaine, a Schedule II narcotic drug
7  controlled substance, in violation of Title 21, United States
8  Code, Section 841(a)(1).

9  B. MEANS OF THE CONSPIRACY

10      The means by which the objects of the conspiracy were to be
11  accomplished were in substance as follows:

12      1. Withers would obtain kilogram quantities of cocaine in
13  Los Angeles, California and would supervise and control a cocaine
14  and crack cocaine distribution organization as well as actually
15  distribute cocaine and crack cocaine.

16      2. Janetta Johnson would assist Withers in obtaining cocaine
17  and also would distribute cocaine and crack cocaine for Withers.

18      3. Defendants ABDELKADER and COLEMAN would supply cocaine to
19  Withers and his organization.

20      4. Defendant HUDSPATH, Mary Johnson and Magee would
21  distribute cocaine and crack cocaine for Withers.

22      5. Carter would assist Withers in the distribution of
23  cocaine and crack cocaine by relaying messages to defendant
24  Withers and by distributing cocaine and crack cocaine when
25  needed.

26      6. Dodd would assist Withers by storing Withers' cocaine at
27  his house and by cooking the cocaine powder in order to transform

28                                    3

Reproduced from the holdings of the National Archives at Riverside

1  it into crack cocaine.

2  C. OVERT ACTS

3       In furtherance of the conspiracy, defendants HUDSPATH,

4  ABDELKADER, COLEMAN, along with Janetta Johnson, Mary Johnson,

5  Carter, Dodd, Withers, Armstrong, Magee, Stevenson, and Bonner,

6  and others committed various overt acts within the Central

7  District of California and elsewhere, including but not limited

8  to the following:

9       1. On or about May 21, 1996, in a telephone conversation,

10  Dodd told Withers to bring a box of baking soda over to his house

11  to be used to transform cocaine powder into crack cocaine.

12       2. On or about May 21, 1996, in a telephone conversation,

13  Withers told Mary Johnson to take a box of baking soda with her

14  when she went over to Dodd's house.

15       3. On or about May 26, 1996, in a telephone conversation,

16  Withers told Mary Johnson to keep selling crack cocaine.

17       4. On or about May 28, 1996, in a telephone conversation,

18  Janetta Johnson told Withers that defendant ABDELKADER had 15

19  kilograms of cocaine for sale and that she had approximately

20  $1000 in drug proceeds ready for Withers to pick up.

21       5. On or about May 28, 1996, in a telephone conversation,

22  defendant ABDELRADER told Withers that he had 15 kilograms of

23  cocaine available for sale for $14,500 per kilogram, and Withers

24  agreed to purchase ten kilograms of cocaine from defendant

25  ABDELKADER the next morning.

26       6. On or about May 29, 1996, Withers went to a house in

27  Chino Hills, California where Withers was storing drug proceeds

28                                    4

Reproduced from the holdings of the National Archives Riverside

and picked up money with which to purchase cocaine from defendant ABDELKADER.

7. On or about May 29, 1996, in a telephone conversation, defendant COLEMAN told Withers that he was coming with defendant ABDELKADER to do the deal, and Withers told defendant COLEMAN where to meet him in half an hour.

8. On or about May 29, 1996, defendants COLEMAN and ABDELKADER provided Withers with approximately five kilograms of cocaine in exchange for money.

9. On or about May 29, 1996, Withers met with Mary Johnson at Dodd's residence at 7423 Denker Avenue, Los Angeles, California to give her some of the cocaine which Withers had just purchased.

10. On or about May 30, 1996, in a telephone conversation, Mary Johnson agreed to sell a confidential informant (hereinafter CI#1) eight ounces of crack cocaine the next day.

11. On or about September 16, 1996, Withers purchased approximately one kilogram of cocaine from defendant ABDELKADER.

12. On or about September 20, 1996, in a telephone conversation, Withers and Armstrong discussed the fact that they were trying to help Magee start selling street level quantities of crack cocaine from an apartment located at 7402 S. Western Avenue #4 in Los Angeles, California (hereinafter "the apartment").

13. On or about November 1, 1996, in a telephone conversation, Magee told Armstrong that his nephew, defendant HUDSPATH, was now living at the apartment and was helping him

5

Reproduced from the holdings of the National Archives at Riverside

1  distribute drugs.

2      14. On or about November 6, 1996, in a telephone
3  conversation, Magee told Withers that he needed two more ounces
4  of cocaine, and Withers said he would come over to the apartment.

5      15. On or about November 16, 1996, defendant HUDSPATH
6  informed Magee that he had sold 7 "rocks" to a person for $150.

7      16. On or about November 20, 1996, Magee told Armstrong that
8  he paid Withers $1,100 for two more ounces of cocaine.

9      17. On or about November 28, 1996, in a telephone
10  conversation, Withers told Magee that Carter would give Magee the
11  two more ounces of cocaine.

12      18. On or about November 29, 1996, in a telephone
13  conversation, Carter told Magee that the money for the two ounces
14  of cocaine was short $20.

15      19. On or about December 1, 1996, Magee sold approximately
16  $20 of crack cocaine to a confidential informant.

17

18

19

20

21

22

23

24

25

26

27

28                                6

Reproduced from the holdings of the National Archives at Riverside

COUNT TWO

[21 U.S.C. § 841(a)(1)]

On or about May 28, 1996, in Los Angeles County, within the Central District of California, defendant ROBERT ABDELKADER, SR., aka "Big Daddy", knowingly and intentionally possessed with intent to distribute approximately fifteen kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

7

Reproduced from the holdings of the National Archives at Riverside

COUNT THREE

[21 U.S.C. S 841(a)(1); 18 U.S.C. § 2]

On or about May 29, 1996, in Los Angeles County, within the Central District of California, defendants ROBERT ABDELKADER, SR., aka Big Daddy, and JAMES COLEMAN, aka Quaker, knowingly and intentionally distributed, and aided, abetted, counseled, commanded, induced, and procured the distribution of in excess of one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

Reproduced from the holdings of the National Archives Riverside

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FOUR

[21 U.S.C. § 841(a)(1)]

On or about May 29, 1996, in Los Angeles County, within the Central District of California, defendant MICHEL WITHERS, aka Bill, knowingly and intentionally possessed with intent to distribute in excess of one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

9

Reproduced from the holdings of the National Archives at Riverside

COUNT FIVE

[18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2]

In or about March 1995, in Los Angeles County, within the Central District of California, defendants MICHEL WITHERS, aka Bill, and JOHNNY WITHERS, aiding and abetting each other, conducted a financial transaction involving the proceeds of felonious buying, selling, and dealing in narcotic and dangerous drugs, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds in that defendants MICHEL WITHERS, aka Bill, and JOHNNY WITHERS paid approximately $45,000 for the partial purchase price of an apartment building located at 202 West Indigo Street, Compton, California.  At that time and place, defendants MICHEL WITHERS, aka Bill, and JOHNNY WITHERS knew that said $45,000 represented the proceeds of some form of unlawful activity.

Reproduced from the holdings of the National Archives at Riverside

COUNT SIX

[18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2]

Between in or about May 1996 and in or about July 1996, in Los Angeles County, within the Central District of California, defendants MICHEL WITHERS, aka Bill, and JOHNNY WITHERS, and Valda Carter, aiding and abetting each other, conducted a financial transaction involving the proceeds of felonious buying, selling, and dealing in narcotic and dangerous drugs, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds in that defendants MICHEL WITHERS, aka Bill, and JOHNNY WITHERS, and Valda Carter paid approximately $60,000 for the partial purchase price of a house located at 16249 Vermeer Drive, Chino Hills, California.  At that time and place, defendants MICHEL WITHERS aka Bill, JOHNNY WITHERS, and Valda Carter knew that said $60,000 represented the proceeds of some form of unlawful activity.

11

Reproduced from the holdings of the National Archives Riverside

COUNT SEVEN

[21 U.S.C. § 846]

A. OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about April 19, 1996, in Los Angeles County, within the Central District of California, and elsewhere, defendant MARLIN POLK, aka Boonie, aka Black ("POLK"), along with Michael Drake ("Drake"), Michel Withers, aka Bill ("Withers"), unindicted co-conspirator #1, courier #3 and others known and unknown to the Grand Jury, willfully and knowingly conspired and agreed with each other to commit and carry out offenses against the United States in violation of Title 21, United States Code, Section 846, namely:

1. To knowingly and intentionally possess with intent to distribute more than one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

2. To knowingly and intentionally distribute more than one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

B. MEANS OF THE CONSPIRACY

The means by which the objects of the conspiracy were to be accomplished were in substance as follows:

1. Defendant POLK and Drake would find potential cocaine buyers in Louisville, Kentucky.

2. Drake and Withers would obtain cocaine in Los Angeles,

12

Reproduced from the holdings of the National Archives at Riverside

1  California and arrange to transport the cocaine to Louisville,
2  Kentucky.

3       3. Defendant POLK, Drake, and courier #3 would assist in the
4  transportation of the cocaine to Louisville, Kentucky.

5       4. Defendant POLK would travel to Louisville, Kentucky and
6  take delivery of the cocaine.

7  C. OVERT ACTS

8       In furtherance of the conspiracy, defendants and others
9  committed the following overt acts, among others, within the
10 Central District of California and elsewhere, including but not
11 limited to the following:

12 The December 1994 Distribution

13      1. On or about December 6, 1994, Withers obtained
14 approximately four kilograms of cocaine and gave it to courier #3
15 to transport from Los Angeles, California to Drake's associates
16 in Louisville, Kentucky.

17      2. On or about December 7, 1994, courier #3 transported
18 approximately four kilograms of cocaine from Los Angeles,
19 California to Louisville, Kentucky.

20      3. On or about December 7, 1994, defendant POLK took
21 delivery of four kilograms of cocaine in Louisville, Kentucky.

22      4. On or about December 7, 1994, Drake learned in a
23 telephone conversation with Withers that Drake's associates had
24 not paid the full amount for the four kilograms of cocaine
25 delivered by courier #3.

26
27
28                                  13

Reproduced from the holdings of the *National Archives at Riverside*

April 1995 Attempted Distribution

    5. On or about April 11, 1995, Drake asked courier #3 to transport cocaine to his associates, including defendant POLK, in Louisville, Kentucky.

    6. On or about April 13, 1995, Drake gave courier #3 two kilograms of cocaine to transport to Louisville, Kentucky.

    7. On or about April 13, 1995, Drake drove courier #3 to the Los Angeles International Airport and gave courier #3 an airline ticket obtained by Drake so that courier #3 could transport cocaine to Louisville, Kentucky.

The April 1996 Attempted Distribution

    8. On or about April 5, 1996, Withers gave unindicted co-conspirator #1 approximately half a kilogram of cocaine and instructed unindicted co-conspirator #1 to send it via Federal Express to Drake's associates in Louisville, Kentucky.

    9. On or about April 6, 1996, in a telephone conversation, unindicted co-conspirator #1 informed Withers that the driver of the Federal Express truck was arrested with the cocaine and that the drugs had been seized.

    10. On or about April 19, 1996, in a telephone conversation, Drake told Withers that he would start making threatening telephone calls to unindicted co-conspirator #1 because Withers believed that unindicted co-conspirator #1 was lying about the arrest of the Federal Express driver and that the drugs actually were stolen by unindicted co-conspirator #1.

14

Reproduced from the holdings of the National Archives at Riverside

COUNT EIGHT

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about August 31, 1996, in Los Angeles County, within the Central District of California, and elsewhere, defendant LATRELLA STEVENSON, along with Anthony Jackson ("Jackson"), Michel Withers, aka Bill ("Withers") and others known and unknown to the Grand Jury, willfully and knowingly conspired and agreed with each other to commit and carry out offenses against the United States in violation of Title 21, United States Code, Section 846, namely:

1.   To knowingly and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

2.   To knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

B.   MEANS OF THE CONSPIRACY

The means by which the objects of the conspiracy were to be accomplished were in substance as follows:

1.   Withers would obtain kilogram quantities of cocaine in Los Angeles, California.

2.   Jackson and Withers would cause these kilogram quantities of cocaine to be transported to Atlanta, Georgia.

15

Reproduced from the Holdings of the National Archives at Riverside

3.    Jackson would sell the cocaine to purchasers in
Atlanta, Georgia and Indianapolis, Indiana.

4.    Jackson would send the monetary proceeds of the cocaine
sales, minus his expenses, to Withers.

5.    Defendant STEVENSON would relay information about the
drug transactions between Withers and Jackson and would take
delivery of the drug proceeds in Los Angeles, California.

C.    OVERT ACTS

In furtherance of the conspiracy, defendant STEVENSON, along
with Withers, Jackson, and others committed various overt acts
within the Central District of California and elsewhere,
including but not limited to the following:

1.    On or about May 29, 1996, in a telephone conversation,
Withers informed Jackson that he was about to purchase cocaine
for Jackson and Withers to sell.

2.    On or about June 3, 1996, in a telephone conversation,
Withers told Jackson that he would assist him in obtaining a
cellular telephone that Jackson could use to facilitate his drug
dealing in Atlanta, Georgia.

3.    On or about June 14, 1996, in a series of telephone
conversations, defendant STEVENSON relayed information between
Withers and Jackson about the progress of the drug sales in
Atlanta, Georgia.

4.    On or about June 22, 1996, in a telephone conversation,
Jackson told Withers that he had sold an individual 17 ounces of
cocaine for $11,000, that he would send Withers the proceeds the
next day, and that he wanted Withers to send him more cocaine.

16

Reproduced from the holdings of the National Archives-Riverside

5.   On or about June 26, 1996, in a series of telephone conversations, defendant STEVENSON, at Withers' direction, told defendant Jackson to send drug proceeds to 9750 Glasgow Place, Los Angeles, California.

6.   On or about June 28, 1996, in Los Angeles, California, defendant STEVENSON took delivery of a package containing drug proceeds sent by Jackson.

7.   On or about June 29, 1996, in a telephone conversation, defendant STEVENSON informed Withers that the package from Jackson had arrived, but that she did not count the money.

8.   On or about July 1, 1996, in a telephone conversation, Jackson informed Withers that he had sent close to $20,000 to Withers and asked Withers to send him more drugs via Federal Express in the next week.

17

Reproduced from the holdings of the National Archives Riverside

COUNT NINE

[21 U.S.C. § 843(b)]

On or about June 26, 1996, in Los Angeles County, within the Central District of California, defendant LATRELLA STEVENSON, acting with the intent to help bring about the distribution of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic controlled substance, knowingly and intentionally used a communication facility, namely, a telephone.

18

Reproduced from the holdings of the National Archives at Riverside

COUNT TEN

[18 U.S.C. § 1956(a)(1)(A)(i); 18 U.S.C. § 2]

On or about June 29, 1996, in Los Angeles County, within the Central District of California, defendants MICHEL WITHERS, aka Bill, and LATRELLA STEVENSON knowingly and willfully conducted a financial transaction affecting interstate and foreign commerce, and aided, abetted, counseled, commanded, induced, and procured the conducting of a financial transaction affecting interstate and foreign commerce, namely, the movement of monetary instruments by delivery through Federal Express Delivery Service from a location outside of California to a location in Los Angeles, California, which involved the proceeds of a specified unlawful activity, that is, the sale of illegal narcotics, with the intent to promote the carrying on of said specified unlawful activity, knowing while conducting such financial transaction that the property involved in the financial transaction, that is monetary instruments, represented the proceeds of some form of unlawful activity.

Reproduced from the holdings of the National Archives at Riverside

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ELEVEN

[21 U.S.C. § 846]

A. OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about March 27, 1997, in Los Angeles County, within the Central District of California, and elsewhere, defendants MICHEL WITHERS, aka Bill ("WITHERS"), SHANNON CULVER ("CULVER"), along with Brady Armstrong III, aka Shady ("Armstrong"), Vito Raymond Sotelo ("Sotelo"), Manuel Rios ("Rios"),  Armando Santoya-Soria, aka Fish ("Santoya-Soria"), Dartagnan Magee, aka Die ("Magee"), Beatrice Parks, aka Jamie Robinson, aka Andrea Johnson, aka Jamir Robinson ("Parks"),  Gregory Allen Rhodes, aka "G" ("Rhodes"), Djuan Wilson, aka Lomat, aka Cody ("Wilson"), courier #1 and others known and unknown to the Grand Jury, willfully and knowingly conspired and agreed with each other to commit and carry out offenses against the United States in violation of Title 21, United States Code, Section 846, namely:

1. To knowingly and intentionally possess with intent to distribute more than one kilogram of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

2. To knowingly and intentionally possess with intent to distribute more than one kilogram of a mixture or substance containing a dectectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1);

20

Reproduced from the holdings of the National Archives at Riverside

3. To knowingly and intentionally distribute more than one kilogram of a mixture or substance containing a dectectable amount of cocaine, a Schedule II narcotics drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

4. To knowingly and intentionally distribute more than one kilogram of a mixture or substance containing a dectectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

B. MEANS OF THE CONSPIRACY

The means by which the objects of the conspiracy were to be accomplished were in substance as follows:

1. Defendant WITHERS and Rhodes would arrange to transport narcotics from Los Angeles, California to St. Louis, Missouri.

2. Defendant WITHERS would obtain narcotics from his supplier, Armstrong.

3. Armstrong would obtain narcotics from his suppliers, Sotelo and Rios.

4. Defendant CULVER would store narcotics and money at her residence for defendant WITHERS and transport narcotics and money when needed.

5. Magee would assist Armstrong in obtaining and distributing the narcotics.

6. Santoya-Soria would assist Sotelo and Rios in obtaining and distributing the narcotics.

21

Reproduced from the holdings of the National Archives at Riverside

1    7. Rhodes would locate couriers to transport the narcotics
2  from Los Angeles, California to St. Louis, Missouri.

3    8. Parks would transport narcotics for Rhodes to St. Louis,
4  Missouri.

5  C. OVERT ACTS

6    In furtherance of the conspiracy, defendants and others
7  committed the following overt acts, among others, within the
8  Central District of California and elsewhere, including but not
9  limited to the following:

10  July 7, 1996 Distribution

11    1. On or about May 28, 1996, defendant WITHERS discussed the
12  purchase and delivery of a quantity of heroin and phencyclidine
13  (PCP) with Rhodes and told Rhodes that he would contact his
14  suppliers and inform Rhodes as soon as he obtained the drugs.

15    2. On or about June 29, 1996, defendant WITHERS asked
16  Stevenson to locate a place for defendant WITHERS to stay in Las
17  Vegas, Nevada.

18    3. On or about July 1, 1996, Rhodes informed defendant
19  WITHERS that Parks was "all situated" for a drug transaction to
20  take place in Las Vegas, Nevada.

21    4. On or about July 2, 1996, defendant CULVER agreed to
22  accompany defendant WITHERS to Las Vegas, Nevada.

23    5. On or about July 3, 1996, defendant WITHERS informed
24  Rhodes that he would not see Parks until Saturday, July 6, 1996.

25    6. On or about July 3, 1996, Armstrong provided
26  approximately 500 grams of heroin to defendant WITHERS.

27

28                              22

Reproduced from the holdings of the National Archives Riverside

7. On or about July 6, 1996, Parks told defendant WITHERS that she would be in her hotel room at the Lady Luck Casino, Las Vegas, Nevada, between 7:00 p.m. and 9:00 p.m. that evening.

8. On or about July 6, 1996, defendants WITHERS and CULVER transported approximately 657 grams of heroin from Los Angeles, California, to Las Vegas, Nevada.

9. On or about July 6, 1996, defendant CULVER checked into the MGM Grand hotel, Las Vegas, room 18-405, with defendant WITHERS.

10. On or about July 6, 1996, defendants WITHERS and CULVER provided Parks with approximately 657 grams of heroin.

11. On or about July 7, 1996, Parks left the Lady Luck Casino with approximately 657 grams of heroin, destined for St. Louis, Missouri.

The August 1996 Distribution

12. On or about August 22, 1996, Rhodes, Wilson, and courier #2 arrived in Los Angeles, California.

13. On or about August 23, 1996, during a telephone conversation, defendant WITHERS told Armstrong that defendant WITHERS wanted to purchase approximately 1,500 grams of heroin, and Armstrong told defendant WITHERS that he could provide the heroin.

14. On or about August 23, 1996, during a telephone conversation, Armstrong ordered approximately 1,500 grams of heroin from Sotelo.

15. On or about August 24, 1996, during a telephone conversation, defendant WITHERS told Rhodes that defendant

23

Case 2:97-cr-01085-CAS   Document 210   Filed 07/01/98   Page 24 of 40   Page ID #:1655
Reproduced from the holdings of the *National Archives at Riverside*

1  WITHERS was going to pick up approximately 1,500 grams of heroin.

2      16. On or about August 24, 1996, Armstrong and Santoya-Soria

3  provided defendant WITHERS with approximately 756 grams of

4  heroin.

5      17. On or about August 25, 1996, defendant WITHERS, Rhodes,

6  and Wilson loaded approximately 756 grams of heroin and

7  approximately 1,490 grams of cocaine into a 1995 GMC Van,

8  Missouri License #W3E242.

9      18. On or about August 25, 1996, courier #2 left Los

10 Angeles, California, destined for St. Louis, Missouri, with

11 approximately 756 grams of heroin and approximately 1,490 grams

12 of cocaine in the 1995 GMC Van.

13 The September 1996 Distribution

14     19. On or about September 4, 1996, defendant WITHERS and

15 Armstrong drove from Armstrong's residence to Distinctive

16 Woodworks, 14917 Gwenchris Court, Paramount, California

17 (hereinafter "Distinctive Woodworks"), where Rios provided

18 approximately 550 grams of heroin to defendant WITHERS and

19 Armstrong.

20     20. On or about September 4, 1996, Magee transported

21 approximately 550 grams of heroin from Distinctive Woodworks to

22 Armstrong's residence.

23     21. On or about September 4, 1996, during a telephone

24 conversation, defendant WITHERS told Rhodes that defendant

25 WITHERS obtained approximately 550 grams of heroin and that

26 defendant WITHERS left Rhodes' money (hereinafter the "drug

27 money") with Armstrong so that Armstrong could obtain more heroin

28                                24

Reproduced from the holdings of the *National Archives at Riverside*

1  for defendant WITHERS and Rhodes.

2      22. On or about September 4, 1996, during a telephone
3  conversation, Armstrong ordered from Sotelo approximately 450
4  additional grams of heroin in order to complete defendant
5  WITHERS' drug order.

6      23. On or about September 10, 1996, Armstrong and Sotelo
7  provided approximately 450 grams of heroin to defendant WITHERS.

8      24. On or about September 17, 1996, during a telephone
9  conversation, defendant WITHERS told Rhodes to instruct Rhodes'
10 courier #1 to drive from St Louis, Missouri, to Laughlin, Nevada,
11 and to have courier #1 call Rhodes when courier #1 arrived in
12 Laughlin, Nevada.

13     25. On or about September 20, 1996, defendant WITHERS,
14 during a telephone conversation, told Rhodes that Polk and Drake
15 would transport the narcotics from Los Angeles, California, to
16 Laughlin, Nevada, where they would meet courier #1, and that
17 approximately 500 grams of cocaine was to be given to Drake and
18 Polk upon arrival in St. Louis, Missouri, as payment for Drake
19 and Polk driving the narcotics to Laughlin, Nevada.

20     26. On or about September 22, 1996, Drake and Polk
21 registered at the Ramada Express Hotel & Casino, Laughlin,
22 Nevada.

23     27. On or about September 22, 1996, Drake and Polk gave
24 courier #1 approximately two kilograms of cocaine and one
25 kilogram of heroin, and Drake told courier #1 that one of the
26 packages of cocaine was for Polk, who would pick up approximately
27 500 grams of cocaine in St. Louis, Missouri.

28                          25

Reproduced from the holdings of the *National Archives at Riverside*

1    28. On or about September 22, 1996, courier #1 transported
2  the approximately one kilogram of heroin and two kilograms of
3  cocaine from Laughlin, Nevada, to St. Louis, Missouri.

4    29. On or about September 25, 1996, Polk obtained
5  approximately 500 grams of cocaine from courier #1 and
6  transported approximately 500 grams of cocaine from St. Louis
7  Missouri, to Louisville, Kentucky.

8  The November 1996 Distribution

9    30. On or about November 14, 1996, during a telephone
10  conversation, defendant WITHERS asked Armstrong the price of
11  approximately 1,750 grams of heroin.

12    31. On or about November 14, 1996, during a telephone
13  conversation, Armstrong told Sotelo that defendant WITHERS wanted
14  to buy approximately 1,750 grams of heroin the following day.

15    32. On or about November 15, 1996, during a telephone
16  conversation, Rios told Sotelo that Armstrong, Magee and
17  defendant WITHERS were at Distinctive Woodworks, but that the
18  courier, Nabor Martin Gutierrez ("Gutierrez"), had not arrived at
19  Distinctive Woodworks with the approximately 1,750 grams of
20  heroin.

21    33. On or about November 15, 1996, defendant WITHERS left
22  the money to purchase the heroin at Distinctive Woodworks.

23    34. On or about November 15, 1996, Gutierrez arrived at
24  Distinctive Woodworks with approximately 1,540 grams of heroin,
25  which he gave to Rios, who then provided the approximately 1,540
26  grams of heroin to Armstrong and Magee.

27    35. On or about November 15, 1996, defendant WITHERS

28                                26

Reproduced from the holdings of the National Archives Riverside

1  obtained the approximately 1,540 grams of heroin from Armstrong.

2       36. On or about November 16, 1996, defendant WITHERS

3  transported approximately 1,540 grams of heroin and approximately

4  980 grams of cocaine from Los Angeles, California, to Palm

5  Springs, California, where he gave the approximately 1,540 grams

6  of heroin and approximately 980 grams of cocaine to courier #1.

7       37. On or about November 17, 1996, courier #1 left Palm

8  Springs, California, destined for St. Louis, Missouri with

9  aproximately 1,540 grams of heroin and approximately 980 grams of

10 cocaine.

27

Reproduced from the holdings of the National Archives Riverside

COUNT TWELVE

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about July 6, 1996, in Los Angeles County, within the Central District of California, defendants MICHEL WITHERS, aka Bill, and SHANNON CULVER knowingly and intentionally distributed and aided, abetted, counseled, commanded, induced and procured the distribution of approximately 657 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

28

Reproduced from the holdings of the National Archives Riverside

COUNT THIRTEEN

[21 U.S.C. § 841(a)(1)]

On or about August 24, 1996, in the Los Angeles County, within the Central District of California, defendant MICHEL WITHERS, aka Bill, knowingly and intentionally possessed with intent to distribute approximately 756 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

29

Reproduced from the holdings of the *National Archives at Riverside*

COUNT FOURTEEN

[21 U.S.C. § 841(a)(1)]

On or about August 25, 1996, in Los Angeles County, within the Central District of California, defendant MICHEL WITHERS, aka Bill, knowingly and intentionally distributed approximately 1,490 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

30

Reproduced from the holdings of the National Archives at Riverside

COUNT FIFTEEN

[21 U.S.C. § 841(a)(1)]

On or about September 4, 1996, in Los Angeles County, within the Central District of California, defendant MICHEL WITHERS, aka Bill, knowingly and intentionally possessed with intent to distribute approximately 550 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

31

Reproduced from the holdings of the National Archives at Riverside

COUNT SIXTEEN

[21 U.S.C. § 841(a)(1)]

On or about September 10, 1996, in Los Angeles County,
within the Central District of California, defendant MICHEL
WITHERS, aka Bill, knowingly and intentionally possessed with
intent to distribute approximately 450 grams of a mixture or
substance containing a detectable amount of heroin, a Schedule I
narcotic drug controlled substance.

Reproduced from the holdings of the National Archives Riverside

COUNT SEVENTEEN

[21 U.S.C. § 841(a)(1)]

On or about September 20, 1996, in Los Angeles County, within the Central District of California, defendant MICHEL WITHERS, aka Bill, knowingly and intentionally distributed approximately two kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotics drug controlled substance.

Reproduced from the holdings of the National Archives at Riverside

COUNT EIGHTEEN

[21 U.S.C. § 841 (a)(1); 18 U.S.C. § 2]

On or about September 20, 1996, in Los Angeles County, within the Central District of California, defendant MARLIN POLK, aka Boonie, aka Black, aided, abetted, counseled, commanded, induced, and procured Michael Drake in the possession with intent to distribute of approximately 1,000 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

34

Reproduced from the holdings of the National Archives Riverside

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT NINETEEN

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about September 20, 1996, in Los Angeles County, within the Central District of California, MARLIN POLK, aka Boonie, aka Black, aided, abetted, counseled, commanded, induced, and procured Michael Drake in the possession with intent to distribute of approximately two kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

35

Reproduced from the holdings of the National Archives at Riverside

COUNT TWENTY

[21 U.S.C. § 841(a)(1)]

On or about November 15, 1996, in Los Angeles County, within the Central District of California, defendant NABOR MARTIN GUTIERREZ knowingly and intentionally distributed approximately 1,540 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

36

Reproduced from the holdings of the National Archives at Riverside

COUNT TWENTY-ONE

[21 U.S.C. § 841 (a)(1)]

On or about November 16, 1996, in Los Angeles County, within the Central District of California, defendant MICHEL WITHERS, aka Bill, knowingly and intentionally distributed approximately 1,540 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

37

Reproduced from the holdings of the National Archives at Riverside

COUNT TWENTY-TWO

[21 U.S.C. § 841(a)(1)]

On or about November 16, 1996, in Los Angeles County, within the Central District of California, defendant MICHEL WITHERS, aka Bill, knowingly and intentionally distributed approximately 980 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

38

Reproduced from the holdings of the National Archives at Riverside

COUNT TWENTY-THREE

[21 U.S.C. § 848(b)]

Beginning at the latest in or about early 1994, and continuing to on or about March 27, 1997, in the Central District of California and elsewhere, defendant MICHEL WITHERS, aka Bill, engaged in a continuing criminal enterprise:

a. by committing the felony offenses charged in counts 4, 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, 21 and 22 of this indictment, which are incorporated by reference herein;

b. which offenses were part of a continuing series of felony narcotics offenses under Title 21 of the United States Code;

1. which offenses were undertaken by defendant MICHEL WITHERS, aka Bill, in concert with five or more persons with respect to whom defendant MICHEL WITHERS, aka Bill, occupied a position of organizer, supervisor or manager, which persons included, but were not limited to:  Beatrice Parks, aka Jamie Robinson, aka Andrea Johnson, aka Jamir Robinson, Anthony Jackson, Mary Johnson, Janetta Johnson, Darrell Carter, aka Spud, Jessie Dodd, courier #1, courier #3, courier #4, courier #5 and unindicted co-conspirator #1; and

2. from which offenses defendant MICHEL WITHERS, aka Bill, obtained substantial income and resources.

The Grand Jury further alleges that:

a. defendant MICHEL WITHERS, aka Bill, was the principal administrator, organizer, or leader of the continuing criminal enterprise and was one of several such principal administrators, organizers, or leaders; and

39

Reproduced from the holdings of the National Archives at Riverside

1    b. the felony offenses committed by defendant MICHEL

2  WITHERS, aka Bill, as charged in counts 4, 5, 6, 10, 11, 12, 13,

3  14, 15, 16, 17, 21 and 22 involved at least 11,970 grams of a

4  mixture or substance containing a detectable amount of cocaine,

5  and 4,846 grams of a mixture or substance containing a detectable

6  amount of heroin.

7

8                          A TRUE BILL

9

10

11                    _____
                        Foreperson

12

13  NORA M. MANELLA
    United States Attorney

14

15  DAVID C. SCHEPER
    Assistant United States Attorney
    Chief, Criminal Division

16

17  SALLY L. MELOCH
    Assistant United States Attorney
18  Chief, Major Crimes Section

19

20

21

22

23

24

25

26

27

28                          40